**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 24-1358**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

SOUTHERN AIRWAYS EXPRESS, LLC,

Petitioner,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*

Respondents.

On Petition for Review of an Order
of the United States Department of Transportation

**[PAGE PROOF] BRIEF FOR RESPONDENTS**

ROBERT B. NICHOLSON
STEVEN J. MINTZ
  *Attorneys*
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

*United States Department of Justice
Antitrust Division*

GREGORY D. COTE
  *Acting General Counsel*
CHARLES E. ENLOE
  *Assistant General Counsel*
PETER J. PLOCKI
  *Deputy Assistant General Counsel*
ERIN D. HENDRIXSON
  *Senior Trial Attorney*
1200 New Jersey Ave., S.E.
Washington, D.C. 20590
(202) 366-0140
erin.hendrixson@dot.gov

*United States Department of
Transportation*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies:

### A. Parties and *Amici*

Petitioner is Southern Airways Express, LLC. Respondents are the United States Department of Transportation and Sean Duffy (automatically substituted for Pete Buttigieg pursuant to Fed. R. App. P. 43(c)(2)), in his official capacity as Secretary of Transportation. There are no intervenors and no *amici*.

### B. Rulings Under Review

Petitioner seeks review of DOT Order 2024-9-18, *Order Selecting Air Carrier* (Sept. 20, 2024), which is printed at JA _____.

### C. Related Cases

There are no related cases.

*/s/ Erin D. Hendrixson*
Erin D. Hendrixson

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

TABLE OF AUTHORITIES ................................................................... iii

GLOSSARY ......................................................................................... v

STATEMENT OF JURISDICTION ...................................................... 1

STATEMENT OF THE ISSUE ............................................................. 1

PERTINENT STATUTES ..................................................................... 2

STATEMENT OF THE CASE .............................................................. 2

    I.  Statutory Background ............................................................... 2

    II.  Factual and Procedural Background ......................................... 3

SUMMARY OF ARGUMENT ............................................................. 6

ARGUMENT ....................................................................................... 7

    I.  DOT's Selection of SkyWest Was Reasonable…………….………....7

    II.  Southern's Remaining Contentions Fail………………………… 12

CONCLUSION ................................................................................... 15

ADDENDUM

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Abdellatif v. United States Dep't of Homeland Sec.*,
109 F.4th 562 (D.C. Cir. 2024) …………………………………………………9, 10

*Getty v. Fed. Sav. & Loan Ins. Corp.*, 805 F.2d 1050 (D.C. Cir. 1986) …………....10

*Hercules, Inc. v. Env't Prot. Agency*, 598 F.2d 91 (D.C. Cir. 1978)…………..……..9

*Point Park Univ. v. NLRB*, 457 F.3d 42 (D.C. Cir. 2006) ………………………... 11

*Ramsingh v. Transp. Sec. Admin.*, 40 F.4th 625 (D.C. Cir. 2022) ……………..……7

*Spirit Airlines, Inc. v. United States Dep't of Transp. & Fed. Aviation
Admin.*, 997 F.3d 1247 (D.C. Cir. 2021) …………………………………….....11, 12

*USAir, Inc. v. Dep't of Transp.*, 969 F.2d 1256 (D.C. Cir. 1992) ……………….....10

**Statutes:**

49 U.S.C. § 41733 ………………………………………………………………….1

49 U.S.C. § 41733(c)(1) ……………………………………………...……1, 3, 6, 7, 11

49 U.S.C. § 41733(c)(1)(A) …………………………………………………...……….7

49 U.S.C. § 41733(c)(1)(B)…………………………………………………………….8

49 U.S.C. § 41733(c)(1)(C)…………………………………………………………….8

49 U.S.C. § 41733(c)(1)(D)…………………………………………………………….8

49 U.S.C. § 41733(c)(1)(E) ………………………………………………….......3

49 U.S.C. § 41733(c)(1)(F) …………………………………………………...……….9

iii

49 U.S.C. § 46110 …………………………….……………………………1, 7

Airline Deregulation Act of 1978, Pub. L. No. 95-504 …………………………..……2

FAA Reauthorization Act of 2024, Pub. L. No. 118-63, Section 561(d)(1)(D) ….12

**Other Materials:**

Essential Air Service, www.transportation.gov/policy/aviation-policy/small-community-rural-air-service/essential-air-service.....................................................2

## GLOSSARY

DOT              United States Department of Transportation

EAS              Essential Air Service

Secretary        United States Secretary of Transportation

SkyWest          SkyWest Airlines, Inc.

Southern         Southern Airways Express, LLC

## STATEMENT OF JURISDICTION

Under 49 U.S.C. § 46110, this Court has jurisdiction to review orders issued by the Secretary of Transportation under, *inter alia*, Parts A and B of Subtitle VII of Title 49 of the U.S. Code. Petitioner seeks review of an order issued under 49 U.S.C. § 41733, a Part A provision. The order was issued on September 20, 2024, and the petition for review was timely filed on November 15, 2024.

## STATEMENT OF THE ISSUE

Southern Airways Express, LLC ("Southern") applied to the United States Department of Transportation ("DOT") to be the provider of federally-subsidized Essential Air Service ("EAS") at Morgantown, West Virginia. On September 20, 2024, DOT issued an Order selecting SkyWest Airlines, Inc. ("SkyWest") as the EAS carrier at Morgantown, based on a reasoned evaluation of the selection factors in 49 U.S.C. § 41733(c)(1). DOT considered each factor and provided a rational explanation for choosing SkyWest based on its service reliability, its codeshare agreement with United Airlines, and the community's preference for SkyWest.

The issue presented is whether DOT's decision to select SkyWest as the EAS carrier at Morgantown was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

1

## PERTINENT STATUTES

Pertinent statutes are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### I.      Statutory Background

In the Airline Deregulation Act of 1978, Pub. L. No. 95-504, Congress largely eliminated Federal regulation of airline prices, routes, and services. Concerned, however, that deregulation would cause small communities to lose scheduled air service, Congress created the EAS program to mitigate that risk. *See id.* § 33.  Under the program, DOT gives subsidies to airlines that provide air service at certain small airports.  *See* 49 U.S.C. §§ 41731-41746.[1]

Congress requires the Secretary, in selecting a carrier to provide service to an eligible community, to "consider, among other factors:" (1) "the demonstrated reliability of the applicant in providing scheduled air service;" (2) "the contractual, marketing, code-share, or interline arrangements the applicant has made with a larger air carrier serving the hub airport;" (3) "the preferences of the actual and potential users of air transportation at the eligible place, including the views of the

---

[1] DOT currently subsidizes service for approximately 66 communities in Alaska and 107 communities in the 48 contiguous States. Additional communities in Hawaii and Puerto Rico also receive subsidized service. *See* Essential Air Service, *available at* www.transportation.gov/policy/aviation-policy/small-community-rural-air-service/essential-air-service.

elected officials representing the users;" (4) "whether the air carrier has included a plan in its proposal to market its services to the community;" and (5) "the total compensation proposed by the air carrier for providing scheduled air service under this section." *Id.* § 41733(c)(1)(A)-(D) and (F).[2]

## II.    Factual and Procedural Background

On December 3, 2020, the Department selected Southern as the EAS carrier at Morgantown for a four-year period from November 1, 2020 through October 31, 2024. *See* Order Selecting Air Carrier, DOT Order 2020-12-3 (Dec. 3, 2020) (JA _____).

On May 29, 2024, the Department sought proposals for an air carrier to provide EAS at Morgantown, with or without subsidy, for a new term beginning on November 1, 2024. Order Requesting Proposals, DOT Order 2024-5-29 (May 29, 2024) (JA _____).

In response, the Department received proposals for consideration from four carriers: Southern, SkyWest, Boutique Air, Inc., and Hyannis Air Service, Inc. d/b/a Cape Air.[3] *See* Order Selecting Air Carrier, DOT Order 2024-9-18, at 3

_____

[2] A sixth factor relates only to eligible places in Alaska and is not at issue here. *See* 49 U.S.C. § 41733(c)(1)(E).

[3] A fifth proposal, from Contour Airlines, was not selectable for reasons not at issue here.  *See* Final Order at 4 n.8 (JA _____).

(Sept. 20, 2024) ("Final Order") (JA _____). Southern, Boutique Air, and Cape Air proposed service on 8-9 seat propeller aircraft to Pittsburgh International Airport and Washington Dulles International Airport with interline agreements.[4] *Id.* SkyWest proposed service on 50-seat jet aircraft to Chicago O'Hare International Airport and Washington Dulles International Airport under a United Airlines codeshare agreement.[5] *Id.*

On August 5, 2024, the City of Morgantown, the Morgantown Municipal Airport, and the Morgantown community submitted a letter recommending SkyWest to serve as the EAS provider at Morgantown. *See* Letter of Recommendation for EAS (Aug. 5, 2024) (JA _____). In its letter, Morgantown explained that SkyWest's proposed service to two major airline hubs like Chicago and Dulles "will provide the community with greater use of the National Transportation System by offering connections to hundreds of locations throughout

_____

[4] Interline agreements allow passengers to connect from a flight on one airline, to another flight on a second airline, without having to collect their baggage and re-check-in with the second airline.

[5] Code sharing is a marketing arrangement in which an airline places its designator code on a flight operated by another airline and sells tickets for that flight. In general, codeshare agreements are distinct from interline agreements because they often provide one point of contact to resolve customer service issues and can allow customers the ability to earn and spend frequent flier miles. In this case, SkyWest would operate United Express service at Morgantown. Final Order at 1 (JA _____); SkyWest Proposal (July 2, 2024) (JA _____).

4

the United States with only one connection, making ease of travel much easier for the community." *Id.*

On September 20, 2024, the Department selected SkyWest as the EAS carrier at Morgantown for a three-year term from November 1, 2024 through October 31, 2027. *See* Final Order (JA _____). In support of its decision, DOT explained that "SkyWest's proposal aligns well with the air carrier selection criteria required for evaluation," finding that "SkyWest has a proven record of providing reliable EAS in markets around the country" and that its "codeshare agreement with United Airlines will give passengers broad access to the national air transportation system via United's extensive domestic and international network." *Id.* at 4 (JA _____). DOT further noted the community's support for SkyWest's proposal and that "SkyWest included a plan to market its services within the community." *Id*. Finally, DOT explained that it considered the total compensation proposed by the applicants and found that "SkyWest's subsidy request falls within the competitive range of options." *Id.*

SkyWest subsequently informed DOT that it could not begin service until December 13, 2024, and Southern agreed to continue providing subsidized service until that date. On November 19, 2024, DOT issued an Order confirming this arrangement. *See* Order Extending Service Obligation, DOT Order 2024-11-10

5

(Nov. 19, 2024) (JA _____).

On November 15, 2024, Southern filed a petition for review challenging DOT's Final Order and an emergency stay motion to allow it to continue as the subsidized carrier during the pendency of this litigation. The Court denied the stay motion on December 12, 2024.

## SUMMARY OF ARGUMENT

The petition for review should be denied because DOT's selection of SkyWest as the EAS carrier at Morgantown was reasonable, adequately explained, and fully supported by the administrative record. In its decision, DOT considered each factor set forth in 49 U.S.C. § 41733(c)(1), and it provided a rational explanation for choosing SkyWest based on its service reliability, its codeshare agreement with United Airlines, and the community's preference for SkyWest service.

Southern's contrary contentions lack merit. The statute does not require that DOT allocate specific weights to the selection criteria. Rather, the statute requires only that DOT evaluate each factor and provide a reasonable explanation for its choice. DOT did this.

6

**ARGUMENT**

## I.     DOT's Selection of SkyWest Was Reasonable.

In reviewing a petition challenging a DOT aviation order under 49 U.S.C. § 46110, this Court "uphold[s] the agency's decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or unsupported by substantial evidence." *Ramsingh v. Transp. Sec. Admin.*, 40 F.4th 625, 631 (D.C. Cir. 2022) (citations omitted). "The arbitrary and capricious standard is deferential, merely requiring that the agency action be reasonable and reasonably explained." *Id.* at 631-32 (citations omitted). DOT's Final Order easily satisfies this standard of review.

In its Final Order, DOT considered each of the relevant factors in 49 U.S.C. § 41733(c)(1) and fully explained its selection of SkyWest:

- In considering "the demonstrated reliability of the applicant in providing scheduled air service" pursuant to 49 U.S.C. § 41733(c)(1)(A), DOT found—and no one before the agency disputed—that SkyWest "has a proven record of providing reliable EAS in markets around the country." Final Order at 4 (JA _____).

- In considering "the contractual, marketing, code-share, or interline arrangements the applicant has made with a larger air carrier serving the

7

hub airport" pursuant to 49 U.S.C. § 41733(c)(1)(B), DOT found that SkyWest's codeshare agreement with United Airlines "will give passengers broad access to the national air transportation system via United's extensive domestic and international network." *Id.* By utilizing a codeshare agreement, SkyWest offered United Express service to two major airports—Dulles and Chicago—where passengers could seamlessly connect to other destinations around the globe.

- Upon reviewing the "preferences of the actual and potential users of air transportation at the eligible place, including the views of the elected officials representing the users," pursuant to 49 U.S.C. § 41733(c)(1)(C), DOT explained that SkyWest was Morgantown's preferred choice, noting that "the City of Morgantown and the airport reviewed the proposals and expressed a preference for SkyWest's proposal." *Id.* No other applicants received support from members of the community or State.

- DOT explained that SkyWest had "included a plan to market its services within the community," as contemplated by 49 U.S.C. § 41733(c)(1)(D). *Id.*; *see also* SkyWest Proposal (July 2, 2024) (JA _____) (noting that SkyWest would actively partner with the community to market the service with a variety of promotions, including print, digital, radio and

8

online).

- Finally, DOT considered the total compensation proposed by SkyWest for providing scheduled air service pursuant to 49 U.S.C. § 41733(c)(1)(F), and it found that "SkyWest's subsidy request falls within the competitive range of options." *Id.* (JA _____). Specifically, DOT noted that one compensation proposal was higher than SkyWest's proposal and two others were lower. *Id.*

DOT therefore found that "SkyWest's proposal aligns best overall with the selection criteria, including through the air carrier's consistent reliability in providing EAS nationwide, its codeshare arrangements that allow for broader access to the national transportation system, and in being the community's preferred choice." *Id.* at 5 (JA _____).

Except in cases where there is no explanation of an agency decision, a "strong presumption of regularity supports the inference that when administrative officials purport to decide weighty issues within their domain they have conscientiously considered the issues. . . ." *Hercules, Inc. v. Env't Prot. Agency*, 598 F.2d 91, 123 (D.C. Cir. 1978) (internal citations omitted). The presumption can be overcome only upon a strong showing of bad faith or improper behavior. *Abdellatif v. United States Dep't of Homeland Sec*., 109 F.4th 562, 570 (D.C. Cir.

9

2024) (internal citation omitted). Southern alleges neither, and in fact admits that "DOT actively considered Southern's proposal." Pet Br. at 9.

Instead, Southern takes issue with DOT's "fail[ure] to demonstrate that it had actually analyzed, weighed and balanced [the statutory] factors." Pet. Br. at 12. That is simply not true. In its decision, DOT identified the three factors—service reliability, codeshare arrangements, and community support—that were most important to its selection. *Id.* at 5 (JA _____). This is all the statute required. This Court has noted that its "review of agency decisions based on multi-factor balancing tests, when all the factors are legitimate, is necessarily quite limited." *USAir, Inc. v. Dep't of Transp.*, 969 F.2d 1256, 1263 (D.C. Cir. 1992) (denying a petition for review when DOT reasonably selected an air carrier from multiple proposals using a multi-factor analysis). Indeed, "the selection of an awardee from among several qualified applicants is basically a matter of judgment, often difficult and delicate, entrusted by Congress to the administrative agency." *Id.* (internal citation omitted).

Southern's position is not supported by the cases it cites. In *Getty v. Federal Savings & Loan Insurance Corp.*, 805 F.2d 1050 (D.C. Cir. 1986), this Court set aside agency orders because the agency merely cited the statutory factors it was required to consider without providing any explanation for how it considered them.

10

*Id.* at 1055 (noting that the record contained "only two fleeting references to the [factors]" – a recitation of the statutory language and a statement that the agency "adhered to the standards set forth in [the statute]."). In contrast, DOT went through each statutory factor in 49 U.S.C. § 41733(c)(1) and explained the reasons why SkyWest was selected, citing to SkyWest's service reliability, codeshare agreement with United, and the community's preference for SkyWest service. That determination was wholly reasonable in light of the evidence received by the Department in this proceeding.

In *Point Park University v. NLRB*, 457 F.3d 42 (D.C. Cir. 2006), another case relied on by Southern, this Court noted that its review was deferential and that it is "indulgent toward administrative action to the extent of affirming an order where the agency's path can be discerned even if the opinion leaves much to be desired." *Id.* at 50 (internal citation and quotation marks omitted). The problem was that the agency, when applying an "open-ended rough-and-tumble of factors" mandated by Supreme Court precedent, cited at least 12 different factors pointing in different directions without ever providing "an adequate explanation for the result [it] reached." *Id.* at 49-51. Here, in contrast, DOT evaluated a discrete list of five factors, and its path can easily be "discerned." And in *Spirit Airlines, Inc. v. United States Dep't of Transportation & Federal Aviation Admin.*, 997 F.3d 1247

11

(D.C. Cir. 2021), this Court held that the agency failed to consider "an important aspect of the problem" that had been specifically raised by several parties. *Id.* at 1255. No such failure occurred—or is even alleged—here.

## II.    Southern's Remaining Contentions Fail.

The statute does not require the Department to give specific weights to the selection criteria. In fact, when Congress passed the FAA Reauthorization Act of 2024, it removed the requirement that DOT "give substantial weight to" one of the factors—the views of elected officials. *See* Public Law 118-63 at Section 561(d)(1)(D) (May 16, 2024). By striking this language, Congress required only that DOT consider each factor, without placing greater weight on the views of the elected officials or any other factor. That is precisely what DOT did. By considering each factor and providing a reasoned explanation for choosing SkyWest, DOT complied with the statute.

In addition to criticizing DOT's overall analysis, Southern also takes issue with DOT's discussion of individual statutory factors. Notably, however, Southern is silent as to two of the three factors that DOT found to be most important in its decision: the community's preference for SkyWest, after Southern served as the EAS carrier for several years prior, and SkyWest's codeshare agreement with United allowing it to offer United Express service to Dulles and Chicago hub

12

airports.

Even as to the factors Southern does address, its objections are unavailing. First, Southern criticizes (Pet. Br. at 12-13) DOT for failing to elaborate on SkyWest's "proven record of providing reliable EAS in markets around the country." Final Order at 4 (JA _____). However, SkyWest attested to DOT of the reliability of its service (SkyWest Proposal (July 2, 2024) (JA _____)); the Morgantown community seconded this (Letter of Recommendation for EAS (Aug. 5, 2024) (JA _____)); and no one in the administrative proceeding disputed SkyWest's reliability. In these circumstances, there was very little that DOT needed to say.

Second, Southern criticizes DOT for not sufficiently analyzing SkyWest's marketing plan. Pet. Br. at 13. The statute requires only that an applicant submit a marketing plan, which SkyWest did. SkyWest Proposal (July 2, 2024) (JA _____). And DOT did analyze the plan to the extent of finding it adequate. Final Order at 4 (JA _____). It had no need to go further because the marketing plan was not one of the three statutory factors that DOT found most significant when selecting SkyWest.

Finally, Southern criticizes DOT's handling of the statutory "total compensation" factor. Pet. Br. at 13-14. To the extent that Southern implies that

13

there is something inherently suspicious about awarding service to a carrier that was not the lowest bidder, it is mistaken. The statute governing EAS awards does not require an award to the lowest bidder, nor does it make lower compensation more important than any of the other statutory criteria. It is true, of course, that DOT must consider total compensation, and it did so here. In its Final Order, the Department set out in detail the costs of all the carriers' proposals and correctly found that the compensation in SkyWest's proposal was "within the competitive range of options" – higher than those of Southern and Cape Air and lower than that of Boutique Air. Final Order at 4 (JA _____). Finding SkyWest's proposal was "within the competitive range" was a reasonable way to analyze this factor. Southern's suggestion that reliance on the competitive range could (though did not here) lead to exceptionally expensive awards (Pet. Br. at 14) is unsound: the Department, in the hypothetical situation of exceptionally expensive proposals, would be free to select a different bid or to reject all of the bids and order a rebidding.

By evaluating each factor and providing a reasoned explanation for choosing SkyWest as the EAS carrier at Morgantown, DOT complied with the statute.

14

**CONCLUSION**

For all of these reasons, the petition for review should be denied.[6]

Respectfully submitted,

ROBERT B. NICHOLSON          GREGORY D. COTE
STEVEN J. MINTZ                   *Acting General Counsel*
  *Attorneys*                    CHARLES E. ENLOE
950 Pennsylvania Ave., N.W.        *Assistant General Counsel*
Washington, D.C. 20530           PETER J. PLOCKI
                                   *Deputy Assistant General Counsel*
*United States Department of Justice*
*Antitrust Division*               */s/ Erin D. Hendrixson*
                                 ERIN D. HENDRIXSON
                                   *Senior Trial Attorney*
                                 1200 New Jersey Ave., S.E.
                                 Washington, D.C. 20590
                                 (202) 366-0140
                                 erin.hendrixson@dot.gov

                                 *United States Department of*
                                 *Transportation*

MARCH 2025

_____

[6] If the Court nonetheless concludes that Southern is entitled to relief, it should follow its usual course of reversing and remanding for further proceedings at DOT. The Court should not also vacate the award to SkyWest because this could prevent passengers who have booked tickets on SkyWest from using them and deprive Morgantown of any air service until completion of a new EAS proceeding.

## CERTIFICATE OF COMPLIANCE

I hereby certify that, according to the word count provided in Microsoft Word, the foregoing brief – excluding those parts exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1) – contains 3,234 words. The brief complies with the length, typeface and type style requirements of Federal Rule of Appellate Procedure 32, using Times New Roman, 14-point font.

*/s/ Erin D. Hendrixson*
Erin D. Hendrixson

**CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2025, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*/s/ Erin D. Hendrixson*
Erin D. Hendrixson

**ADDENDUM**

# TABLE OF CONTENTS

49 U.S.C. § 41733 (excerpt) ........................................................................A1

49 U.S.C. § 46110 (excerpts) ...................................................................A2

FAA Reauthorization Act of 2024 (May 16, 2024) (excerpts) …………...………..A3

**49 U.S.C. § 41733 (excerpts)**

**§ 41733 - Level of basic essential air service**

. . .

(c) AVAILABILITY OF COMPENSATION.—

(1) If the Secretary decides that basic essential air service will not be provided to an eligible place without compensation, the Secretary shall provide notice that an air carrier may apply to provide basic essential air service to the place for compensation under this section. In selecting an applicant, the Secretary shall consider, among other factors—

> (A) the demonstrated reliability of the applicant in providing scheduled air service;

> (B) the contractual, marketing, code-share, or interline arrangements the applicant has made with a larger air carrier serving the hub airport;

> (C) the preferences of the actual and potential users of air transportation at the eligible place, including the views of the elected officials representing the users;

> (D) whether the air carrier has included a plan in its proposal to market its services to the community;

> (E) for an eligible place in Alaska, the experience of the applicant in providing, in Alaska, scheduled air service, or significant patterns of non-scheduled air service under an exemption granted under section 40109(a) and (c)–(h) of this title; and

> (F) the total compensation proposed by the air carrier for providing scheduled air service under this section.

A1

**49 U.S.C. § 46110 (excerpts)**

**§ 46110 – Judicial review**

(a) FILING AND VENUE.- Except for an order related to a foreign air carrier subject to disapproval by the President under section 41307 or 41509(f) of this title, a person disclosing a substantial interest in an order issued by the Secretary of Transportation . . . in whole or in part under this part, part B, or subsection (l) or (s) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day.

(b) JUDICIAL PROCEDURES.- When a petition is filed under subsection (a) of this section, the clerk of the court immediately shall send a copy of the petition to the Secretary . . . .The Secretary . . . shall file with the court a record of any proceeding in which the order was issued, as provided in section 2112 of title 28.

(c) AUTHORITY OF COURT.- When the petition is sent to the Secretary . . . the court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the Secretary . . . to conduct further proceedings. After reasonable notice to the Secretary . . . the court may grant interim relief by staying the order or taking other appropriate action when good cause for its action exists. Findings of fact by the Secretary . . ., if supported by substantial evidence, are conclusive.

(d) REQUIREMENT FOR PRIOR OBJECTION.- In reviewing an order under this section, the court may consider an objection to an order of the Secretary . . . only if the objection was made in the proceeding conducted by the Secretary . . . or if there was a reasonable ground for not making the objection in the proceeding.

(e) SUPREME COURT REVIEW.- A decision by a court under this section may be reviewed only by the Supreme Court under section 1254 of title 28.

A2

**FAA Reauthorization Act of 2024 (May 16, 2024) (excerpts)**

**Public Law 118-63**

TITLE V—PASSENGER EXPERIENCE IMPROVEMENTS
Subtitle C—Air Service Development
. . .
Sec. 561. Essential air service reforms.
. . .
(d) LEVEL OF BASIC ESSENTIAL AIR SERVICE.—Section 41733 of title 49, United States Code, is amended—
(1) in subsection (c)(1)—
. . .
(D) in subparagraph (C), as so redesignated, by striking "giving substantial weight to" and inserting "including";

A3